IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRENT MORGAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ARION CAPITAL MANAGEMENT, | : | |
| LLC, et al. | : | NO.   21-3557 |

**MEMORANDUM AND ORDER**

ELIZABETH T. HEY, U.S.M.J.                                                                                                  July 15, 2022

      Brent Morgan ("Plaintiff" or "Mr. Morgan") brought suit against Arion Capital Management, LLC, ("Arion") and Larry Frascella, one of the members of the Board of Managers of Arion, seeking payment under the severance provision of his Employment Agreement, alleging breach of contract and violation of Pennsylvania's Wage Payment and Collection Law ("WPCL").[1]  Presently before the court are cross-motions for summary judgment focused on whether Mr. Morgan's employment was terminated for cause as defined by the governing contract language.  For the reasons that follow, I will deny both motions for summary judgment.

**I.    FACTS**

      Arion was formed to invest in Computer Assisted Wagering ("CAW") specifically targeting horse racing.  L. Frascella Dep. at 9-15.  Originally, Larry Frascella, operating under the name Pace Analytics, hired NLP, an analytics company, to develop a model to analyze variables relevant to horse races and predict a winner.  Id. at 12-13.  When NLP

---

[1] In addition to Larry Frascella, Plaintiff named John Does 1-10 as the principal decision makers, policymakers, and agents of Arion in the WPCL count of the Complaint.  Plaintiff has never identified these individuals by name.

left the picture, Mr. Morgan was brought in on an informal basis sometime after the fall of 2015 and started analyzing the results of the NLP model.  Id. at 15; Morgan Dep. 1 at 23-24, 29-33.[2]  After some negotiation, Arion and Mr. Morgan executed the Employment Agreement, effective February 14, 2017.  Morgan Dep. 1 at 23-24; Doc. 31-2 at 2.  At that time, the Board of Managers included Donald Johnson, Larry Frascella, David Frascella, James R. Carnes, and Michael Schubiger.  L. Frascella Dep. at 16.[3]  Mr. Carnes explained that Mr. Morgan was hired "to essentially run the main part of the business, which was . . . the development of statistical models and their implementation to make money in the [CAW] business."  Carnes Dep. at 16.  Also on February 14, 2017, members and shareholders of Arion, including Mr. Morgan's company SigmaDelta Research, LLC, executed the Arion Operating Agreement.[4]

According to the Employment Agreement, Mr. Morgan's base salary was $150,000 per year, with bonuses based on net income.  Doc. 31-2 at 3 (Employment Agreement ¶ 5(a)-(b)).  The Employment Agreement also provided for severance pay.

---

[2]Mr. Morgan's deposition took place over two days, May 13 and May 16, 2022, and the pagination is not sequential between the two days.  Therefore, I will refer to Morgan Dep. 1 and Morgan Dep. 2.

[3]In listing the members of Arion, Mr. Carnes did not include Mr. Schubiger. Carnes Dep. at 11-12.

[4]The Employment Agreement and Operating Agreement are attached to both motions for summary judgment.  Doc. 31-2 at 2-9 (Employment Agreement), 11-46 (Operating Agreement); Doc. 32-4 at 1-8 (Employment Agreement), 9-39 (Operating Agreement).  For ease of discussion, I will refer to the attachments to Plaintiff's summary judgment motion and pinpoint citations to these documents will be to the ECF pagination.  When referring to the depositions, I will identify the deponent and the page number of the deposition transcript.

> If Employee is terminated by Company without Cause (as defined in the Operating Agreement), the Company shall pay Employee as severance [an] amount equal to the Employee's Base Salary, which severance amount shall be payable over the 12-month period after Employee's termination in equal amounts in accordance with the Company's regular payroll schedule, less applicable deductions and withholdings.

Id. (Employment Agreement ¶ 5(c)).  The Operating Agreement defined "cause" in the section related to "Company Call Rights" as

> the occurrence of any of the following events, as reasonably determined by the Board of Managers of the Company: (i) the failure to perform such duties as are reasonably requested in good faith by the Board of Managers; (ii) gross negligence, recklessness or willful misconduct in the performance of duties; (iii) an act of dishonest, fraudulent or illegal conduct; (iv) the breach, by Mr. Morgan, of that certain Employment Agreement by and between the Company and Mr. Morgan, dated as of the date hereof; (v) the commission of violations of Company policy including, but not limited to, policies on equal employment opportunity, non-discrimination, non-harassment, non-retaliation, and workplace violence; and (vi) the commission of violations of state or federal law or regulation in the performance of his duties to the Company.

Id. at 36-37 (Operating Agreement ¶ 7.6(b)).

On January 28, 2019, Arion wrote Mr. Morgan a letter terminating his employment effective January 31, 2019.  Doc. 31-2 at 150-51.  According to the letter, drafted by Mr. Carnes and signed by Larry Frascella as the Managing Member of Arion, Mr. Morgan was "terminated for cause because the company failed to reach the agreed upon benchmarks contained in the operating agreement to which you are a signatory." Id. at 150; Carnes Dep. at 19.  The letter continued:

3

> As you may recall Section 7.6(b) defines "cause" to include "the failure to perform such duties as are reasonably requested in good faith by the Board of Managers". Arion incorporated benchmarks into its operating agreement that were based in large part on your assessment of what you could and could not do for the company as a Consultant. By signing that agreement you agreed that these benchmarks were reasonable. Despite this, you failed to achieve these goals in the time period to which you agreed.

Doc. 31-2 at 150.

According to Mr. Carnes, who authored the termination letter, Mr. Morgan was terminated because he was unsuccessful in creating a model that worked. "[W]e firmly believed that cause was lack of performance and lack of him doing what we asked him to do, which was to make money . . . ." Carnes Dep. at 20.[5] During his deposition, Mr. Morgan stated that his job with Arion was three-fold: "first rebuild the wagering model, such that upon making those amendments, the NLP product would then become profitable," second, "swap out the predictive probability model, so it would make even more money," and third, "managing the software engineering such that what is being realized in live markets match that of expected simulations." Morgan Dep. 1 at 42. Mr. Morgan explained that the NLP model was the "predictive and probability model, but that he built and implemented the wagering models that were used for win, place, show, and exacta in live markets. Id. at 48-49. According to Mr. Morgan, his models "allowed us

---

[5] Although various Board members cited other reasons for Mr. Morgan's termination, see L. Frascella Dep. at 28-30 (lying about results, failure to back up changes to the model, inability to debug the model), Johnson Dep. at 41-42 (misrepresented his education), the letter indicates and Mr. Carnes who drafted the letter testified that Mr. Morgan's termination was for "lack of performance." Carnes Dep. at 42.

to wager $20 million and have a return on a $200,000 bank roll of an additional 200,000, roughly." Id. at 43.  However, Morgan admitted that he did not "have a predictive probability model that outperformed the markets," which was one of the main goals of his employment. Id. at 70.  According to Mr. Carnes, even after Mr. Morgan's termination, no one was successful in creating a model that generated positive cash revenue.  Carnes Dep. at 46, see also Johnson Dep. at 46-47 (the team subsequently put together created a working model in the better part of a year, but it was not successful).  Thereafter, the Board of Managers gave up on the project.  Johnson Dep. at 47-48.

## II.   LEGAL STANDARD

A moving party is entitled to summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).[6]  A factual dispute is "material" if it might affect the outcome of the case under governing law.  Id.

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence or presence of a genuine dispute. . . ."  Fed. R. Civ. P. 56(c)(1)(A), (B).  "Speculation, conclusory allegations, and mere

---

[6]Anderson predated the 2010 Amendment to Rule 56.  However, the change in wording and location within the rule for the summary judgment standard did not alter the standard or caselaw interpretation of the standard.  Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendments.

denials are insufficient to raise genuine issues of material fact." Boykins v. Lucent Techs., Inc., 78 F. Supp.2d 402, 408 (E.D. Pa. 2000). The evidence presented must be viewed in the light most favorable to the non-moving party. Id. at 407 (citing Matshushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

### III. DISCUSSION[7]

#### A. Breach of Contract

Plaintiff claims that Arion's failure to pay him severance constitutes a breach of contract. Defendant maintains that because Mr. Morgan's employment was terminated for cause, Arion owes no severance payment. To succeed on a claim for breach of contract under Pennsylvania law, a party must prove "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages." Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003) (quoting CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. 1999)). Discerning the parties' intent is the primary objective of contract interpretation, and the strongest expression of the parties' intent is the language of the contract itself. Baldwin v. Univ. of Pittsburgh Med. Ctr., 636 F.3d 69, 75-76 (3d Cir. 2011). When the terms of a contract are unambiguous, the court must give effect to the plain meaning of the agreement as a matter of law. Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co., 905 A.2d 462, 469 (Pa. 2006). The parties' disagreement as to the proper construction of the

---

[7]The Employment Agreement states that Pennsylvania law will apply to all disputes relating to Mr. Morgan's employment. Doc. 31-2 at 7 (Employment Agreement ¶ 16(a)).

6

contract does not render a contract ambiguous. Pac. Emps. Ins. Co. v. Glob. Reins. Corp. of Am., 693 F.3d 417, 426 (3d Cir. 2012). Rather, "contractual terms are ambiguous if they are subject to more than one reasonable interpretation" when applied to the facts of the case. Murphy v. Dusquesne Univ. of the Holy Ghost, 777 A.2d 418, 430 (Pa. 2021) (citation omitted). "Where the written terms of the contract are not ambiguous and can only be read one way, the court will interpret the contract as a matter of law." Hullett v. Towers, Perrin, Forster & Crosby, Inc., 38 F.3d 107, 111 (3d Cir. 1994). If the court determines that the contract is ambiguous, "then the interpretation of the contract is left to the factfinder, to resolve the ambiguity in light of extrinsic evidence." Id.

Here, the "for cause" provision of Arion's Operating Agreement as referenced in Mr. Morgan's Employment Agreement is the crux of the dispute, specifically, paragraph 7.6(b)(i), which defines cause as "the failure to perform such duties as are reasonably requested in good faith by the Board of Managers." Doc. 31-2 at 35 (Operating Agreement, ¶ 7.6(b)(i)). Defendant argues that Plaintiff's failure to build a predictive model that outperformed the markets was the basis for his termination and, because this was the main goal of hiring Mr. Morgan, his termination was for cause under the subsection of the Operating Agreement quoted above. Doc. 32-1 at 3. Plaintiff urges that no reasonable fact-finder could find that Plaintiff was terminated for cause as defined in the Employment and Operating Agreements because 1) there is no evidence that Mr. Morgan was not diligent in his efforts to build a profitable model, and 2) a majority of the Board did not actually rely on a for-cause reason in terminating him. Doc. 31-1 at 7.

Genuine issues of material fact bar summary judgment for either side, and the language of the applicable cause provision of the Operating Agreement is not entirely unambiguous.[8]  The relevant question is whether Arion terminated Mr. Morgan for his "failure to perform such duties as are reasonably requested in good faith by the Board of Managers."  Doc. 31-2 at 35 (Operating Agreement ¶ 7.6(b)(i)).  Neither "failure" nor "reasonable" is defined, and both are capable of different meanings in this context.

In his deposition, Mr. Morgan discussed his accomplishments for Arion, including building and implementing wagering models that were used for horse race wagering, specifically for win, place, show, and exacta bets in live markets.  Morgan Dep. 1 at 48-49.  According to Mr. Morgan, his models "allowed us to wager $20 million and have a return on a $200,000 bank roll of an additional 200,000, roughly."  Id. at 43.  It is unclear whether the word failure in the "for cause" provision should be judged only on results achieved without regard to whether Mr. Morgan was using his best efforts or if a failure required some intentional deficiency on Mr. Morgan's part.  See Carnes Dep. at 57 ("I think he tried.  .. . . But it appeared that he was working."); Larry Frascella Dep. at 46 ("I am not going to sit here and say he did not work hard, he did.  He tried, but he couldn't get it done.").  That is, did Mr. Morgan's "failure" to succeed establish cause for his termination, or could he be terminated only for "failure" to perform work?

---

[8]Plaintiff argues that the "for cause" provision must be strictly construed because forfeiture provisions are disfavored in Pennsylvania.  Doc. 31-1 at 7-8.  However, none of the cases cited by Plaintiff concern a severance provision in an employment contract.  Moreover, whether strictly construed or not, material issues bar summary judgment.

Also, Defendants have not established beyond dispute that Arion's request was reasonable. Mr. Morgan conceded that he did not "have a predictive probability model that outperformed the markets." Morgan Dep. 1 at 70. This, according to Mssrs. Carnes and Johnson, was why Mr. Morgan was hired. See Johnson Dep. at 59 (Morgan hired to "[b]uild a mathematical analytics model that [would] beat the markets, beat the horse racing pools"); Carnes Dep. at 16, 23 (Morgan's job was "the development of statistical models and their implementation to make money in the computer assisted wagering business" and terminated for "failure to deliver"). However, the testimony does not establish whether this outcome could reasonably have been accomplished. Although Mr. Johnson stated that he "worked with other groups that are very successful in this space," Johnson Dep. at 49, and David Frascella discussed the success of Michael Carver in this area, David Frascella Dep. at 33, Arion did not have the success they expected with Mr. Morgan's successors, id. at 47; Carnes Dep. at 46, and eventually gave up on the project. David Frascella Dep. at 64 ("We abandoned ship."). According to Mr. Johnson, he left the company "[w]hen a determination was made [by a majority of the board] that this wasn't viable through any expertise." Johnson Dep. at 48, 49. Thus, a genuine issue of fact exists regarding the reasonableness of Board's request barring summary judgment on the breach of contract claim.[9]

---

[9] Plaintiff also argues that the stated reason given for Mr. Morgan's termination – "because the company failed to reach the agreed-upon benchmarks contained in the operating agreement (Doc. 31-2 at 15) – was not a permissible reason because no such benchmarks were part of the for cause reasons for termination in the operating agreement. Doc. 31-1 at 6-7. As noted, the termination letter also referenced Mr. Morgan's agreement that the "benchmarks" he was asked to meet were reasonable but that he failed

9

B.     Pennsylvania's WPCL

Both parties also seek summary judgment on the WPCL claim.  Plaintiff argues that Defendants have not established that a good faith dispute exists to avoid the liquidated damages under the WPCL, Doc. 31-1 at 14-15.  At this point, Plaintiff has not established a right to the severance pay, thus, consideration of liquidated damages is not appropriate at this juncture.  See Bansept v. G & M Auto., 434 F. Supp.3d 253, 260 (E.D. Pa. 2020) ("[T]he statute's liquidated damages provision is available to only a subset of those prevailing plaintiffs who can also prove that they are entitled to damages as a result of an employer having no good faith defense to wages remaining unpaid for a set amount of time under the statue.") (quoting Andrews v. Cross Atl. Cap. Partners, Inc., 158 A.3d 123, 126 (Pa. Super. 2017)).  Therefore, I will deny Plaintiff's motion for summary judgment on the WPCL claim.

Defendants argue that Plaintiff is not entitled to the protections of Pennsylvania's WPCL because his employment was never based in Pennsylvania as he was a resident and domiciled in Arizona at the time of his employment with Arion.  Doc. 32-1 at 4-7.  According to Defendants, "only those employees 'based in Pennsylvania' can be deemed covered by the PWPCL."  Id. at 6 (quoting McGoldrick v. TruePosition Inc., 623 F.

---

to meet them.  Doc. 31-2 at 150.  Plaintiff is correct that the for cause provision in section 7.6(b) did not by its terms contain specific benchmarks, whereas section 7.6(c) allowed the company to buy back Mr. Morgan's interest if certain net income numbers were not reached.  Doc. 31-2 at 36-37.  One of the issues for trial will be whether Arion properly invoked a for cause basis for terminating Mr. Morgan.

Supp.2d 619, 629 (E.D. Pa. 2009)).  Plaintiff responds that McGoldrick supports the position that Pennsylvania's WPCL does apply to him.  Doc. 33-1 at 4-7.

In McGoldrick, there was no choice of law provision in the employment contract and the court was left to determine whether the plaintiff was based in Pennsylvania.

> To make a claim pursuant to the WPCL, [the plaintiff] must qualify as an "employee" covered by the Law.  This Court and others have previously held that "protections contained in the WPCL extend only to those employees based in Pennsylvania."  Killian v. McCulloch, 873 F. Supp. 938, 942 (E.D. Pa. 1995), aff'd, 82 F.3d 406 (3d Cir. 1996); Hides v. CertainTeed Corp., No. 94-7352, 1995 WL 458786, at *2 (E.D. Pa. July 26, 1995) ("[I]t seems clear that, under the [WPCL], the plaintiff must allege that he was employed in the Commonwealth of Pennsylvania."); Tomlinson v. Checkpoint Sys., No. 06-2205, 2008 WL 219217, at *9-10 (E.D. Pa. Jan. 25, 2008).  Since our decision in Killian, there have been a number [of] Pennsylvania cases where protections of the WPCL have been extended to those working outside of Pennsylvania.  These were instance[s] where the employee's contracts with their employers contained Pennsylvania choice of law provisions and/or Pennsylvania forum selection clauses.  See Crites v. Hoogovens Tech. Servs., Inc., 43 Pa. D. & C.4th 449, 452-56 [2000 WL 356696] (Pa. C.P. 2000); Synesiou v. DesignToMarket, No. 01-5358, 2002 WL 501494, at *1 (E.D. Pa. April 3, 2002).  In the present case, there is no Pennsylvania choice of law provision or forum selection clause contained in [the plaintiff's] alleged contract. . . . Hence, this Court is left to determine, absent any choice of law or forum selection clause, whether [the plaintiff] was based in Pennsylvania for purposes of the WPCL.

McGoldrick, 623 F. Supp.2d at 628-29.  Here, in contrast to McGoldrick, Mr. Morgan's Employment Agreement contains a choice of law provision, identifying Pennsylvania's as the governing law.  See Doc. 31-2 at 7 (Employment Agreement ¶ 16(a) ("Governing Law and Consent to Jurisdiction.  This Agreement and all disputes relating to Employee's

11

employment with Company shall be subject to, governed by, and construed in accordance with the laws of the State of Pennsylvania irrespective of any choice of law and/or of the fact that one or both of the parties now is or may become a resident of a different state.")).

In Crites, cited by the McGoldrick court, the employee plaintiff was a resident of Ohio whose work for a Delaware corporation with its principal place of business in Pennsylvania was performed in Mexico. Crites, 43 D. & C.4th at 451 (2000 WL 356696). Because the plaintiff's employment agreement stated that "[t]his agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania and the parties agree that original jurisdiction of any dispute hereunder shall be the Court of Common Pleas of Allegheny County, Pennsylvania," the court concluded that the language of the agreement dictated the governing law. Id. at 451, 458. "We hold that where, as here, an employment agreement requires the use of Pennsylvania law and makes Pennsylvania the exclusive forum for employer-employee disputes, an employee of a Pennsylvania corporation who neither lives nor works in Pennsylvania may, nevertheless, sue that corporation in Pennsylvania pursuant to the WPCL." Id. at 458. Thus, based on the language of Mr. Morgan's Employment Agreement, Pennsylvania law applies and he is entitled to the protections of Pennsylvania's WPCL. I will therefore deny Defendants' motion on this claim.

IV. **CONCLUSION**

Genuine issues of material fact bar summary judgment on the breach of contract claim. As such, summary judgment is also inappropriate on Plaintiff's motion for

summary judgment on the WPCL claim. Defendants' motion for summary judgment on the WPCL claim will be denied because the Employment Agreement provides for Pennsylvania law to govern all disputes arising from Plaintiff's employment. As such, Plaintiff is entitled to the protections of Pennsylvania's WPCL.

    An appropriate Order follows.