IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRENT MORGAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ARION CAPITAL MANAGEMENT, | : | |
| LLC, et al. | : | NO. 21-3557 |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ELIZABETH T. HEY, U.S.M.J.                                                                 December 7, 2022

Plaintiff, Brent Morgan, brought suit against Arion Capital Management, LLC, ("Arion") and Larry Frascella, one of the members of the Board of Managers of Arion, pursuant to Pennsylvania's Wage Payment and Collection Law ("WPCL"), seeking severance under his Employment Agreement. Complaint ¶¶ 42-45, 47-53. The narrow issue before the court is whether Mr. Morgan was terminated for cause as defined in the governing agreements. Following a one-day bench trial, I conclude that he was not, and find in favor of Plaintiff on his claim for severance.[1]

---

[1] The parties consented to magistrate judge jurisdiction and the Honorable Juan R. Sánchez referred the case to me for all proceedings including the entry of judgment pursuant to 28 U.S.C. § 636(c) and Local Rule of Civil Procedure 72.1. See Doc. 6.

I.  **FACTUAL BACKGROUND**[2]

Arion was formed to invest in Computer Assisted Wagering ("CAW") specifically targeting horse racing. Doc. 48, Pretrial Stipulation, Agreed Facts ("Stip'd Facts") ¶ 1. The company was operated pursuant to the Operating Agreement, id. ¶ 2; see Trial Exh. 2 ("Operating Agreement"), and managed by a Board of Managers consisting of Larry Frascella, Donald Johnson, David Frascella, and James Carnes, with Larry Frascella elected as Board Chair. Stip'd Facts ¶¶ 2-4. Arion initially consulted with Mike Carver, a successful CAW wagerer, and engaged a company called NLP to develop a wagering model based on data analytics, specifically as it related to horse racing. Id. ¶ 5. After the relationship between Arion, Mr. Carver, and NLP deteriorated, Mr. Carver withdrew from the endeavor and NLP stepped back. Id. ¶ 6. The NLP model was a basic entry level model, and Arion needed a new person to drive the data analytics to build upon the NLP model and meet the needs of Arion's CAW long-term plan. Id. ¶¶ 7-8. Mr. Morgan initially provided some consulting services to help Arion, and then was hired by Arion in February 2017 to fill this role. Id. ¶¶ 8, 11-12; see also Trial Exh. 1 ("Employment Agreement").

Mr. Carnes drafted the Employment Agreement with the assistance of counsel. Stip'd Facts ¶ 14. It provided that Mr. Morgan was entitled to a Base Salary of $150,000

---

[2]Much of the factual background comes from the agreed upon facts included in the parties' joint pretrial stipulation. Doc. 48. The testimony at trial supported these agreed upon facts. The parties submitted but did not file their pretrial submissions, and I have had them filed. See Docs. 48 (Pretrial Stipulation); 49 (Plaintiff's Proposed Findings of Fact and Conclusions of Law); 50 (Defendant's Proposed Findings of Fact and Conclusions of Law).

per year plus other benefits.  Id. ¶¶ 12-13; see also Employment Agreement ¶ 5.  Mr. Morgan was hired as the Director of Analytics with job duties set forth in an attachment to the Employment Agreement.  Employment Agreement ¶ 3 & Schedule A.  At Mr. Morgan's request, the Employment Agreement contained a severance provision, although he did not negotiate the wording of the severance provision.  Stip'd Facts ¶ 18; N.T. 9/19/22 at 31 (Morgan), 98 (Carnes).[3]

According to the Employment Agreement, if Mr. Morgan's employment was terminated other than for cause, as defined in the Operating Agreement, Arion would pay him his base salary ($150,000) as severance pay.  Employment Agreement ¶ 5(a), (c).  The cause provision appeared in section 7.6 of the Operating Agreement, entitled "Company Call Rights."  As defined therein, "cause" meant any of six events as "reasonably determined by the Board of Managers."  Operating Agreement § 7.6(b)(i)-(vi).  The parties agree that the relevant portion of the definition is "the failure to perform such duties as are reasonably requested in good faith by the Board of Managers."  Id. § 7.6(b)(1)(i); Stip'd Facts ¶¶ 17-21.[4]  According to the Operating Agreement, a majority vote of the Board of Managers was required to act on its behalf.  Stip'd Facts ¶ 22; see also Operating Agreement § 5.4.

---

[3]Mr. Carnes believed that he and Mr. Morgan had "some back and forth" on the language of the severance provision, but did not recall any specific language that Mr. Morgan changed.  N.T. 9/19/22 at 97.

[4]Mr. Morgan did not negotiate the meaning of cause.  Stip'd Facts ¶ 18.  Other grounds for cause included gross negligence, reckless or willful misconduct, dishonest/fraudulent/illegal conduct, breach of the Employment Agreement, and violation of certain company policies.  Operating Agreement ¶ 7.6(b)(ii)-(vi).

3

Pursuant to the Employment Agreement, Mr. Morgan was responsible for, among other things, all modeling efforts. Stip'd. Facts ¶ 23; see also Employment Agreement, Schedule A (first bullet point). In order to provide a successful working model, Mr. Morgan needed to develop two related modules designed to work together -- a prediction module which uses statistics from previous races to predict the probability of each horse finishing in a desired position, and a wagering module which uses the probabilities from the prediction model along with track payouts to determine how much to wager on each horse for each position. Stip'd Facts ¶¶ 24-26; N.T. 9/19/22 at 33 (Morgan). Mr. Morgan made amendments to the NLP wagering module, making changes to the win bets, which were part of the NLP model, and adding the place, show, and exacta bets, Stip'd Facts ¶¶ 29-31; N.T. 9/19/22 at 33, 40 (Morgan), and designed a prediction module. Stip'd Facts ¶¶ 27-28; N.T. 9/19/22 at 34 (Morgan). However, Mr. Morgan was not successful in developing a model that consistently beat the market.[5] Stip'd Facts ¶ 32; N.T. 9/19/22 at 48 (Morgan).

The Board voted to terminate Mr. Morgan's employment in January 2019 during a Board phone call. Stip'd Facts ¶ 33.[6] There was no discussion among the Board members about whether the termination was for cause within the meaning of the Operating Agreement either during that call or otherwise. Id. ¶ 34. Larry Frascella

---

[5] At trial, Mr. Morgan explained that "beating the market" meant continually winning "without having any knowledge of what other people are betting on." N.T. 9/19/22 at 36.

[6] Mr. Carnes testified that he did not remember if the meeting was in person or via the phone. N.T. 9/19/22 at 112.

4

testified that, at the time of Mr. Morgan's termination, he did not know that the Employment Agreement had a severance provision and did not know what the definition of cause was with respect to the severance provision. N.T. 9/19/22 at 157.[7] By letter dated January 28, 2019, drafted by Mr. Carnes, reviewed by counsel, and signed by Larry Frascella, Arion formally terminated Mr. Morgan's employment effective January 31, 2019. Stip'd Facts ¶¶ 35-36.

> Your employment with Arion . . . will be officially terminated for cause on January 31, 2019, specifically because the company failed to reach the agreed upon benchmarks contained in the operating agreement to which you are a signatory.
>
> As you may recall Section 7.6(b) defines "cause" to include "the failure to perform such duties as are reasonably requested in good faith by the Board of Managers". Arion incorporated benchmarks into its operating agreement that were based in large part on your assessment of what you could and could not do for the company as a Consultant. By signing that agreement you agreed that these benchmarks were reasonable. Despite this, you failed to achieve these goals in the time period to which you agreed.

Termination Letter (Trial Exh. 9).

After Mr. Morgan's termination, Arion hired a team from Stony Brook University, but the Stony Brook team was unsuccessful at creating a CAW horse racing model that

---

[7]Larry Frascella's testimony was not entirely clear on this point. In addition to testifying that he did not know there was a severance provision at the time of the termination, or what it entailed, N.T. 9/19/22 at 157, he also testified: "Unaware may be a -- willfully neglected it -- neglected it may be a -- you know I didn't pay much attention to it, because I was under the understanding that it meant a certain thing." Id. at 156. In considering all his testimony, I find that he was unaware of the severance provision when Mr. Morgan was terminated.

5

could beat the market. Stip'd Facts ¶ 58; N.T. 9/19/22 at 159-60, 162 (Larry Frascella). Thereafter, Arion hired Andrew Grosjean, a professional gambler, who was also unsuccessful at creating a CAW horse racing model that could beat the market. Stip'd Facts ¶ 59; N.T. 9/19/22 at 161-62 (Larry Frascella). Arion has abandoned its efforts to create a CAW horse racing model that can beat the market. Stip'd Facts ¶ 60; N.T. 9/19/22 at 164 (Larry Frascella).

On July 8, 2021, Mr. Morgan's counsel sent Arion a letter demanding Mr. Morgan's severance pay. Trial Exh. 11. Larry Frascella rejected the demand by email on July 16, 2021. Trial Exh. 12. Plaintiff filed this suit on August 10, 2021, seeking the $150,000 severance payment as well as liquidated damages from Arion and Larry Frascella for breach of the Employment Agreement and pursuant to Pennsylvania's WPCL. Complaint ¶¶ 41-45 (breach of contract), 46-51 (WPCL).[8]

## II.     DISCUSSION

### A.     Breach of Contract

A breach of contract claim is established by the following elements: (1) the existence of a contract, including its essential terms; (2) a breach of contract; and (3) resultant damages. Commc'ns Supply Corp. v. Iron Bow Tech., LLC, 529 F. Supp.3d 423, 431 (W.D. Pa. 2021). There has never been a dispute in this case that the Employment Agreement constitutes a contract; the dispute has always centered on

---

[8]In his Complaint, Plaintiff named Arion, Larry Frascella and "John Does 1-10" as Defendants. With the agreement of the parties, I dismissed the John Doe Defendants. Doc. 37.

whether Mr. Morgan was terminated for cause within the meaning of the Employment Agreement.

Throughout the trial, Arion's managers testified that they terminated Mr. Morgan's employment due to his lack of success in developing a CAW model that made money and beat the market. N.T. 9/19/22 at 111-12 (Mr. Carnes), 176-77 (Larry Frascella), 210 (David Frascella).[9] Similarly, the termination letter referred to Mr. Morgan's failure to meet the benchmarks set forth in the Operating Agreement. Trial Exh. 9; see also N.T. 9/19/22 at 101 (testimony of Mr. Carnes who drafted the termination letter). The question is thus whether Mr. Morgan's failure to create a CAW wagering model that beat the markets constituted cause for purposes of the severance provision.

In answering this question, the court must consider the contract as a whole giving effect to all the provisions, avoiding interpretation of one provision that annuls another. Epsilon Energy USA, Inc. v. Chesapeake Appalachia, LLC, 561 F. Supp.3d 467, 475 (M.D. Pa. 2021) (citing Commonwealth ex rel. Shapiro v. UPMC, 208 A.3d 898, 911

---

[9]Mr. Johnson was not asked about Mr. Morgan's termination at trial. There is some controversy regarding whether the Managers discussed whether Mr. Morgan's termination was for cause at the time he was terminated. See N.T. 9/19/22 at 112-13 (Mr. Carnes remembered specific conversation that termination was for cause), 157, 193 (Larry Frascella did not know that Plaintiff had a severance package and did not know the definition of cause at the time of Mr. Morgan's termination), 210-11 (David Frascella voted to terminate Plaintiff for cause based on Mr. Morgan's failure to produce a product that beat the market). However, considering my conclusion, I need not delve into this controversy.

7

(Pa. 2019) (citing Commonwealth ex rel. Kane v. UPMC, 129 A.3d 441, 463-64 (Pa. 2015)))).[10] Doing so favors Plaintiff.

The severance provision of the Employment Agreement appears in a section entitled "Compensation," which includes a base salary, the opportunity to earn bonuses (referred to as "Membership Interests") based on the income generated by the CAW model, and severance. Employment Agreement ¶ 5. The Severance provision provides for payment of Plaintiff's base salary over a 12-month period after termination if he "is terminated . . . without Cause (as defined in the Operating Agreement)." Id. ¶ 5(c). In the Operating Agreement, the definition of cause appears in a section relating to the Company's call rights, which allows the company to purchase Mr. Morgan's equity/membership interest in the event he resigned, was terminated for cause, or failed to meet certain benchmarks of net income. Operating Agreement § 7.6(b)-(c). Arion relied on the first of six defined cause provisions – "the failure to perform such duties as are reasonably requested in good faith by the Board of Managers." Id. § 7.6(b)(i).

---

[10]The courts have recognized that the same rule of contract interpretation, giving meaning to the whole, is applicable in employment contracts. See, e.g., Integrated Serv. Sols., Inc. v. Rodman, Civ. No. 07-3591, 2009 WL 1152162, at *5 (E.D. Pa. Apr. 29, 2009) (reading an incentive reward employment contract provision in concert with other provisions in the contract); Hazell v. Servomation Corp., 440 A.2d 559, 560-61 (Pa. Super. 1982) (noting employment agreement will be read as a whole, interpreting each part with reference to the whole).
    Plaintiff maintains, as he did in seeking summary judgment, that the "for cause" provision is a forfeiture provision which must be strictly construed. Doc. 47, Conclusions of Law ¶ 12. As explained in my prior memorandum, none of the cases cited by Plaintiff concern a severance provision in an employment contract. See Morgan v. Arion Cap. Mgmt., LLC, Civ. No. 21-3557, 2022 WL 2805329, at *4 n.8 (E.D. Pa. July 15, 2022).

Plaintiff's "duties" are set forth in the Employment Agreement and listed in the attached schedule. Employment Agreement ¶ 3 & Schedule A. These duties include activities and knowledge related to CAW, for example, modeling efforts, database management, monitoring of bet files and bug-monitoring, and "using data-driven modeling towards a professional gambling 'advantage player' mindset." Id. Schedule A. Schedule A does not provide any goals or metrics to analyze Plaintiff's performance, nor does it incorporate the net income requirements listed in the Bonus section of the Employment Agreement or the benchmarks that, if not met, would trigger the company's call rights in the Operating Agreement. Id. Arion does not contend that Mr. Morgan failed to perform the duties listed in Schedule A. For example, Larry Frascella specifically testified that Plaintiff worked very hard and that he respected Plaintiff's work ethic. N.T. 9/19/22 at 172-73. Instead, Arion terminated Plaintiff's employment based on the results (or lack thereof) of Plaintiff's efforts. N.T. 9/19/22 at 111-12 (Carnes), 176-77 (Larry Frascella), 210 (David Frascella).

The structure of the contract does not favor Defendants' construction. As noted, under "Compensation" the Employment Agreement lists a base salary of $150,000 per year, "the opportunity to earn a bonus" in the form of a membership interest in the company based on the net income the company realizes in certain periods of time after beginning live betting, and severance of one year's base salary if he is terminated without cause. Employment Agreement ¶ 5. Having laid out specific benchmarks for bonuses in the previous subsection, id. ¶ 5(b)(i)-(v), it is notable that the severance provision immediately following the bonuses does <u>not</u> indicate that the failure to meet these

9

benchmarks would result in termination for cause. Id. ¶ 5(c). It is incongruous that Plaintiff's Employment Agreement would provide for bonuses (membership interest) with such specificity, but fail to indicate that a failure to meet these benchmarks would provide cause for termination in the next subdivision of the Employment Agreement.

In addition, the "cause" provision itself does not favor Defendants' construction of the first definition. Under the doctrine of *noscitur a sociis*,

> "the meaning of words may be indicated or controlled by those words with which they are associated. Words are known by the company they keep." Commonwealth v. ex rel. Fisher v. Phillip Morris, Inc., 4 A.3d 749, 756 n.9 (Pa. Cmwlth. 2010). The principle of *noscuitur a sociis* is applied to "avoid ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of the [General Assembly]." Gustafson v. Alloyd Co., 513 U.S. 561, 575 (1995). Pursuant to this rule, "the meaning of a doubtful word may be ascertained by reference to the meaning of the words associated with it." Ford Motor Co. v. Unemployment Compensation Bd. of Review, 79 A.2d 121, 123 ([Pa. Super.] 1951).

S.A. v. Pittsburgh Pub. Sch. Dist., 160 A.3d 940, 945 (Pa. Cmwlth. 2017).[11] Here, adoption of Defendants' construction of the phrase "the failure to perform such duties as are reasonably requested" -- to refer to failing to meet benchmarks – would render it qualitatively different from the other definitions contained in the "cause" provision.

---

[11]The doctrine of *noscitur a sociis* is not limited to the construction of statutes and is commonly used in interpreting contracts. See Post v. St. Paul Travelers Ins. Co., 691 F.3d 500, 520 (3d Cir. 2012) (utilizing doctrine to interpret an insurance contract under Pennsylvania law); TIG Specialty Ins. Co. v. Koken, 855 A.2d 900, 914 (Pa. Cmwlth. 2004) (same); Northway Village No. 3, Inc. v. Northway Props., Inc., 244 A.2d 47, 50 (Pa. 1968) (utilizing the doctrine to interpret a lease).

10

> "Cause" means the occurrence of any of the following events, as reasonably determined by the Board of Managers of the Company: (i) the failure to perform such duties as are reasonably requested in good faith by the Board of Managers; (ii) gross negligence, recklessness or willful misconduct in the performance of duties; (iii) an act of dishonest[y], fraudulent or illegal conduct; (iv) the breach, by Mr. Morgan, of that certain Employment Agreement by and between the Company and Mr. Morgan, dated as of the ate hereof; (v) the commission of violations of Company policy including, but not limited to, policies on equal employment opportunity, non-discrimination, non-harassment, non-retaliation, and workplace violence; and (vi) the commission of violations of state or federal law or regulation in the performance of his duties to the Company.

Operating Agreement § 7.6(b)(i)-(vi). The failure to achieve the results that Arion desired with the CAW system is not of the same caliber as willful misconduct, gross negligence, or the commission of a crime. Considered in light of the other actions constituting cause, the first cause provision utilized to terminate Mr. Morgan is more akin to insubordination than failing to meet the benchmarks set by the Company for Mr. Morgan to obtain a bonus.

The evidence supports a finding that the Managers of Arion fired Mr. Morgan based on his failure to create a predictive probability model in the horse racing realm that outperformed the market. Because the definition of cause in the Operating Agreement does not include such failure in the term "cause," and neither the Employment Agreement nor the Operating Agreement included a failure to meet the enunciated benchmarks as a basis for termination, Plaintiff has succeeded on his breach of contract claim and is entitled to the severance payment.

B. **Liability under the WPCL**

1. Severance Pay

The WPCL "provides a statutory remedy when [an] employer breaches a contractual obligation to pay earned wages." DeAsencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003) (quoting Antol v. Esposto, 100 F.3d 1111, 1117 (3d Cir. 1996)). "[S]everance pay and other separation related contractual arrangements are . . . covered by the WPCL." Shaer v. Orthopaedic Surgeons of Cent. Pa., Ltd., 938 A.2d 457, 465 (Pa. Super. 2007) (citing, inter alia, Bowers v. NETI Techs., Inc., 690 F. Supp. 349, 353 (E.D. Pa. 1988)). Having already determined that Mr. Morgan has established a breach of his employment agreement and is entitled to severance pay, he has also established entitlement to that pay under the WPCL.[12]

2. Liability of Larry Frascella

Mr. Morgan brought the WPCL claim not only against Arion, but also against Larry Frascella personally. Complaint ¶ 53 & ad damnum clause. Thus, I must determine if Larry Frascella is personally liable under the WPCL. I conclude that he is.

> The WPCL defines "employer" as "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." "To hold an 'agent or officer' personally liable for unpaid wages, 'evidence of an active role in decision making is required.'"

---

[12]Defendants do not dispute that the WPCL allows for recovery of a proved violation of a contractual obligation to pay wages, relying on its argument that there was no breach. Doc. 46 ¶¶ 53-58.

Hirsch v. EPL Techs, Inc., 910 A.2d 84, 88 (Pa. Super. 2006) (quoting 43 P.S. § 260.2a; Int'l Ass'n of Theatrical Stage Empls., Local Union No. 3 v. Mid-Atl. Promotions, Inc., 856 A.2d 102, 105 (Pa. Super. 2004) (citing Mohney v. McClure, 568 A.2d 682 (Pa. Super. 1990))).

Here, it is stipulated that Arion was managed by a Board of Managers and that Larry Frascella served as Board Chair. Stip'd Facts ¶ 3. During his testimony, Larry Frascella described himself as "the primary funder of the business," contributing eighty percent of the investment in the business. N.T. 9/19/22 at 144. He also testified that he had decision making authority over who to hire and fire. Id. at 145. He described the decision to fire Mr. Morgan as "made jointly," but admitted that based on his financial contribution to the business, "it kind of deferred to me, this is what we should do." Id. at 154. Based on this testimony, I conclude that Larry Frascella had an active role in the decision-making process, including the decision to terminate Mr. Morgan, and can be held personally liable for the severance payment under the WPCL.[13]

### 3. Liquidated Damages

In specific instances, the WPCL provides for liquidated damages.

> Where wages remain unpaid for thirty days beyond the regularly scheduled payday, or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employe[e] of a proper claim or for sixty days beyond the date of the agreement, award or other act making wages payable, . . . and no good faith contest or dispute of

---

[13]Defendants have not addressed Larry Frascella's personal liability under the WPCL in their proposed findings and conclusions, Docs. 46 & 50, relying on their arguments that there was no breach of the severance provision and no bad faith.

13

> any wage claim including the good faith assertion of a right to set-off or counter-claim exists accounting for such non-payment, the employe[e] shall be entitled to claim, in addition, as liquidated damages an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater.

43 P.S. § 260.10. "[T]he statute's liquidated damages provision is available to only a subset of those prevailing plaintiffs who can also prove that they are entitled to damages as a result of an employer having no good faith defense to wages remaining unpaid for a set amount of time under the statute. Section 260.10 is intended to be a disincentive or penalty for employers to withhold wages in bad faith." Andrews v. Cross Atl. Cap. Partners, Inc., 158 A.3d 123, 136 (Pa. Super. 2017). "Although the statute is silent as to which party bears the burden of proof with respect to whether the employer acted in good faith, case law makes it clear that the burden rests with the employer." Hirsch, 910 A.2d at 93 n.9 (citing Thomas Jefferson Univ. v. Wapner, 903 A.2d 565, 575 (Pa. Super. 2006)). As previously discussed, severance pay constitutes wages under the WPCL. Braun v. Wal-Mart Stores, Inc., 24 A.3d 875, 954, 956-57 (Pa. Super. 2011) (citing Bowers, 690 F. Supp. at 353).

Here, Plaintiff argues that a number of things support a finding of bad faith including the *post* hoc justification for failing to pay severance contained in the termination letter, Mr. Frascella's response to the demand letter, and Defendants' inconsistent explanations in discovery, stipulations, and at trial. Doc. 47 Conclusions ¶ 44. However, Defendants have consistently maintained that they fired Mr. Morgan because he was not successful in developing a CAW model in the horse racing realm that

14

beat the market. Trial Exh. 9 (Termination Letter – noting that failure to reach the benchmarks in in the Operating Agreement was the basis for termination); N.T. 9/19/22 at 111-12 (Mr. Carnes), 176-77 (Larry Frascella), 210 (David Frascella). While this was not a for cause reason under the Employment and Operating Agreements, I find no bad faith in the misunderstanding.

When asked if he found cause to terminate Mr. Morgan's employment to avoid payment of the severance, Larry Frascella credibly testified that he "never even thought about the severance clause" and did not know what it meant until he received the demand letter from Plaintiff's counsel in July of 2021, eighteen months after Mr. Morgan's termination. N.T. 9/19/22 at 170-71.[14] In fact, at the trial, Larry Frascella, claiming a lack of business prowess, stated that he still does not understand the lawsuit because he is not making any money from Mr. Morgan's work after having invested and lost two million dollars. Id. at 171-72.

The evidence does not suggest that the managers purposely avoided an obligation they knew they had. Rather, I conclude that Defendants' failure to pay the severance is due to a lack of knowledge about the existence and import of the severance provision and

---

[14]Plaintiff argues that "the Court could reasonably conclude that Defendants' explanations are pretextual justifications to force Plaintiff into litigation and trial to recover what is rightfully due and owing to him." Doc. 47 Conclusions ¶ 44. However, Mr. Frascella's testimony regarding the severance provision was credible, both that he did not think of it at the time of Mr. Morgan's termination, and that he considered Plaintiff's failure to create a horse racing CAW model that beats the market "cause" to withhold the severance. Additionally, the fact that Mr. Morgan did not demand severance until eighteen months after termination does little to advance his claim that Defendants exercised bad faith.

a belief that the failure to produce a successful horse racing CAW model provided cause to terminate Mr. Morgan's employment. Therefore, Plaintiff is not entitled to liquidated damages under the WPCL.

    4.  Attorneys' Fees

  The WPCL provides that attorneys' fees "shall" be awarded to a prevailing Plaintiff. 43 Pa.S.C.A. § 260.9a(f); see also Oberneder v. Link Comp. Corp., 696 A.2d 148, 151 (Pa. 1997) ("We thus hold that an award of attorneys' fees to a prevailing employee in an action brought under the [WPCL] is mandatory."). If Plaintiff seeks a fee award under the WPCL, he shall file a fee petition within thirty days of the entry of the accompanying order. Defendants shall have fourteen days after the petition is filed to respond.

## III. CONCLUSION

  Plaintiff's employment was terminated without cause, entitling him to severance pay pursuant to the Employment Agreement. I reject Arion's argument that Plaintiff's failure to develop a CAW horse racing model that beat the market provided a basis to terminate his employment for cause as defined in section 7.6(b)(i) of the Operating Agreement. As explained, the benchmarks upon which Arion relies were not made part of the cause provision. Moreover, Defendants' construction of the relevant cause provision is inconsistent with the duties appended to the Employment Agreement and inconsistent with the magnitude of the other provisions in the definition of cause. Therefore, Plaintiff is entitled to recover the severance payment under the WPCL, and because Larry Frascella is an employer within the meaning of the WPCL, both he and

16

Arion are liable to Plaintiff. However, Defendants have established that they did not act in bad faith in failing to tender the severance. Therefore, Plaintiff is not entitled to liquidated damages under the WPCL.

An appropriate Judgment Order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRENT MORGAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| ARION CAPITAL MANAGEMENT, | : | |
| LLC, et al. | : | NO. 21-3557 |

## JUDGMENT ORDER

AND NOW, this 7th day of December, 2022, after a bench trial before the undersigned, and for the reasons stated in the accompanying Findings of Fact and Conclusions of Law, JUDGMENT is entered in favor of Plaintiff Brent Morgan and against Defendants Arion Capital Management, LLC, and Larry Frascella in the amount of $150,000.

                            BY THE COURT:


                            /s/ Elizabeth T. Hey_____
                            ELIZABETH T. HEY, U.S.M.J.

.